## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  13-60631-ROSENBAUM/HUNT

HEATHERLEE FINN,

       Plaintiff,

v.

KENT SECURITY SERVICES, INC.,

       Defendant.

_____/

### <u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

This matter is before the Court upon Defendant's Motion to Dismiss [D.E. 4] and Defendant's Motion to Strike [D.E. 8].  The Court has reviewed Defendant's Motions, all supporting and opposing filings, and the record in this case and is otherwise fully advised in the premises.  For the reasons set forth below, the Court grants Defendant's Motion to Dismiss and denies Defendant's Motion to Strike.

### BACKGROUND

On March 18, 2013, Plaintiff filed a Complaint against her employer, a security-services company, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII") (Count I), and the Florida Civil Rights Act, Fla. Stat. 760-01, *et. seq.* ("FCRA") (Count II).  D.E. 1 at 6-8, ¶¶ 46-65.  Plaintiff's Complaint asserts that on December 18, 2012, Plaintiff received from the Equal Employment Opportunity Commission ("EEOC") a right-to-sue letter authorizing her to file suit against Defendant for the alleged violations of Title VII.  *Id.* at 3, ¶ 14.

1

According to Plaintiff, Defendant discriminated against security guards and applicants in its hiring and placement procedures.  D.E. 1 ¶¶ 18, 21-23, 30-37.  Specifically, Plaintiff contends that Defendant would honor its clients' requests to place security guards based on their race, sex, national origin, or skin color.  *Id.* at 1, ¶ 1.  Although Plaintiff is not a security guard herself, she argues that Defendant required Plaintiff to carry out these allegedly illegal hiring and placement procedures that were based on the protected statuses of the security guards.  *Id.* ¶¶ 25, 27, 39, 41, 42, 44, 45.  Plaintiff also asserts that she was harassed and retaliated against because of her objection to these alleged illegal practices.  D.E. 1 at 4, ¶ 24.

Defendant now moves to dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6), Fed. R. Civ. P.  D.E. 4.  In support of its Motion, Defendant asserts that Plaintiff failed to adequately plead her claims.  *Id.* at 2.  Defendant claims that Plaintiff does not allege that she was ever a security guard or applicant and has not pled any form of discrimination or injury against her.  *Id.* at 1.  In addition, Defendant contends that Plaintiff's Complaint fails to provide any facts necessary to allege a plausible Title VII claim.  *Id.* at 2.  Plaintiff responds that all of her claims are properly pled and she has the right to sue on behalf of other employees because Title VII protects advocacy on behalf of the rights of others.  D.E. 7 at 1-2.

**DISCUSSION**

**I. Rule 12(b)(6) Standard**

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss.  That rule provides, in relevant part,

> **(b)** **How to Present Defenses**. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses

by motion:

**(6)** failure to state a claim upon which relief can be granted; . . . .

*Id*. The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Wilchombe v. TeeVee Toons*, Inc., 555 F.3d 949, 958 (11th Cir. 2009); *Corbitt v. Home Depot U.S.A., Inc*., 573 F.3d 1223, 1256 (11th Cir. 2009); *Cobb v. State of Florida*, 293 F. App'x 708, 709 (11th Cir. 2008); *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295 (11th Cir. 2007). "[N]aked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly*, 550 U.S. at 557. As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562). On a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Syst., Inc*., 119 F.3d 922, 923 (11th Cir. 1997).

Courts therefore conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Iqbal,* 556 U.S. at 679.  A court should first ask whether the pleading properly asserts "well-pleaded factual allegations" or, whether, instead it merely asserts "'legal conclusions' [that are] not entitled to the assumption of truth." *Id.* at 679-680 (quoting *Twombly*, 550 U.S. at 555).  If the complaint contains factual allegations that are well pled, the court should assume their veracity and then move to the next step, asking whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679.  Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted).

## II. Standing to Sue Under Title VII

Defendant asserts that Plaintiff's claims should be dismissed because she does not have standing to sue. D.E . 4 at 9.  Although the Court disagrees that Plaintiff necessarily lacks standing, the Court agrees that, as currently pled, the Court is unable to discern from the Complaint whether Plaintiff satisfies the standing requirement.

Only a "person aggrieved" may file suit under Title VII.  42 U.S.C. § 2000e-5(b), (f)(1).  The Supreme Court recently held that standing for those "aggrieved" under Title VII must be construed more narrowly than the outer boundaries of Article III.  *Thompson v. N. Am. Stainless*, *LP*, __ U.S. __, 131 S. Ct. 863, 869 (2011).  Instead of Article III standing, the proper test to determine standing under Title VII is the "zone of interests" test. *Id.* at 870.  Under this test, review must be denied "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 870

4

(quoting *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399–400 (1987)).

In *Thompson*, the Court determined that Article III standing would be too expansive for Title VII purposes because it would allow, for instance, a shareholder to sue a company for firing a valuable employee for racially discriminatory reasons, even though this type of indirect, monetary injury is not the type of interest that Congress intended to protect under Title VII's enforcement provisions. *Id.* at 869. On the other hand, however, the Court concluded that the plaintiff in *Thompson* fell within Title VII's zone of interests because his employer fired him in an effort to retaliate against the employee's fiancee, a co-worker who had filed a sex-discrimination claim against the employer with the EEOC. *Id.* at 870. This type of third-party retaliation claim — where the alleged retaliation results from the employer's attempt to retaliate against an individual who engaged in protected activity under Title VII — is actionable under Title VII. *Id.*

Defendant suggests that Plaintiff's claim here is different from the type that the Supreme Court permitted under *Thompson* and more like the kind that the Court found fell outside the zone of interests protected by Title VII. In support of its position, Defendant directs the Court to *Cochran* v. *Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260 (N.D. Ala. 2012). In *Cochran*, the plaintiff employee alleged that her employer honored customers' discriminatory requests for temporary employees based on racial biases but did not contend that she herself enjoyed protected status. *Id.* at 1266-69. Significantly, the white plaintiff did not allege that her employer took discriminatory action against African-American co-workers with the intent to affect the plaintiff. *Id.* at 1269. Instead, the plaintiff's complaint understandably expressed that the plaintiff was "personally offended by and opposed" to the defendant's placement procedures and ridiculing remarks. *Id.*

The court distinguished the plaintiff in *Cochran* from the victim of third-party retaliation in

5

*Thompson*, noting that the *Thompson* plaintiff alleged that the employer there undertook its action with the intent to retaliate for conduct protected by Title VII. *Id.* at 1268-69. In *Cochran*, however, the court reasoned, the plaintiff was "an 'accidental' victim of discriminatory action" because she did not allege that her employer engaged in any discriminatory action against its African-American employees with the intent to affect her. 907 F. Supp. 2d at 1268. Rather, the court explained, the plaintiff "was merely a bystander to whom no discriminatory or harassing conduct was actually directed." *Id.* As a result, the court determined that the plaintiff fell outside the zone of interests protected by Title VII and therefore lacked standing to assert a claim for discrimination under Title VII. *Id.*

This case may be materially distinguishable from *Cochran*. A review of Plaintiff's Complaint does not clarify precisely what claim or claims she seeks to bring. On the one hand, the Complaint asserts that Plaintiff was "harassed and retaliated [against] because of her objection to [Defendant's] illegal practice," but on the other, the Complaint alleges that the "terms and conditions of Plaintiff's job were changed as a result of Defendant's discriminatory practices." D.E. 1 at 4, ¶¶ 24, 25. These allegations appear to attempt to state two causes of action: one for retaliation under Title VII and the other for discrimination under Title VII.

A.  *Discrimination Under Title VII*

Assuming that Plaintiff seeks to bring a claim for discrimination under Title VII, the allegations in the Complaint as currently pled do not establish that Plaintiff falls within the zone of interests sought to be protected by Title VII because they do not establish that Defendant either discriminated against Plaintiff because of her race, color, religion, sex, or national origin, or that

Defendant engaged in discrimination against others on the basis of race, color, religion, sex, or national origin, with the intent to affect her.  Instead, like the plaintiff in *Cochran*, as far as discrimination under Title VII is concerned, Plaintiff here alleges only that "[t]he terms and conditions of [her] job were changed as a result of Defendant's discriminatory practices."  D.E. 1 at ¶ 25.  This allegation provides no basis for determining how Plaintiff, herself not having been discriminated against on the basis of her race, sex, or color, falls within the zone of interests protected by Title VII.  To the extent that Plaintiff's allegations can be construed to mean that she was personally offended by Defendant's conduct, while that situation is certainly understandable, alone, it is not an injury that falls within the zone of interests that Congress made actionable under Title VII.

Nor does the Court agree with Plaintiff that *Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000), necessarily requires the opposite conclusion.  Even setting aside the fact that *Johnson* was issued more than ten years before the Supreme Court clarified in *Thompson* the zone of interests protected by Title VII, the facts at issue in *Johnson* are not analogous to those pled in the Complaint in the pending matter.  In *Johnson*, the plaintiff held a position as a high-level affirmative-action official whose job responsibilities included advocating for minority rights.  He alleged that the defendant sanctioned or punished him for supporting affirmative-action policies and minority hires protected under Title VII and 42 U.S.C. § 1981.  The Sixth Circuit held that the plaintiff could pursue a claim under Title VII.  *See id.* at 577.

While some language in the opinion may be read to suggest that the court concluded that the plaintiff could bring a claim for discrimination on the basis of race, color, religion, national origin, or sex under Title VII, based on the actual facts of *Johnson*, this Court understands *Johnson* to stand

for the proposition that a plaintiff has standing to bring a cause of action for *retaliation* under Title VII where that plaintiff, while not herself a member of the protected group discriminated against, has had adverse action taken against her in retaliation for her support of the protected group members' rights.

There should have been nothing groundbreaking about *Johnson*'s determination that, for purposes of a Title VII retaliation claim, a plaintiff engages in protected activity where she objects to discrimination against others on the basis of their race, color, sex, religion, or national origin. Rather, by the terms of Title VII's anti-retaliation provision itself, the conduct alleged in *Johnson* is necessarily actionable. Title VII's anti-retaliation provision provides,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff therefore must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) some causal relation exists between the two events. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998)). Unlike under Title VII's anti-discrimination provision, no component of the anti-retaliation provision requires that the employer have taken action against the employee *because of* that employee's race, color, religion, sex, or national origin but rather that the employer have taken action because the employee — regardless of race, color, religion, sex, or national origin — opposed discrimination of anyone — including herself or others or both — on the

8

basis of that person or persons' race, color, religion, sex, or national origin.

But the fact that a claim is actionable under Title VII's anti-retaliation provision because an employer has discriminated against an employee based solely on that employee's advocacy of the rights of another under Title VII — and not because of that employee's race, color, religion, sex, or national origin — does not somehow convert such a claim into a Title VII anti-discrimination cause of action or otherwise make it also actionable under Title VII's anti-discrimination provision, which, no matter how broadly construed, still requires that action have been taken against a plaintiff *because of* that person's race, color, religion, sex, or national origin.

Nor, as a practical matter, does the lack of a cause of action for discrimination under Title VII under such circumstances make a difference.  Rather, as a practical matter, any time that an employer discriminates against someone solely because of that person's advocacy of the rights of another under Title VII, that conduct always will qualify as illegal retaliation under Title VII.  Thus, an employee will always be able to bring a Title VII claim in such circumstances.  And, if successful, that employee will have access to Title VII's full panoply of remedies for all retaliation that occurred. Thus, if Plaintiff seeks to bring a claim for discrimination for race, color, or sex discrimination under Title VII, which is based solely on discrimination against others but not against Plaintiff, and if Plaintiff does not allege that Defendant, through its discrimination against others, intended to affect Plaintiff, she lacks standing under Title VII to assert a cause of action for discrimination on the basis of race, color, or sex.

But Plaintiff's Complaint may suggest that Defendant required her, as part of her duties, to serve as the delivery vehicle of Defendant's discrimination against other employees based on their

race, sex, or color.  In other words, Plaintiff may assert that Defendant required her to assign or refrain from assigning security guards to certain details based on their race, color, or gender, as a part of her job duties.  To the extent that Defendant insisted that, as a term or condition of employment, Plaintiff serve as its conduit of its discrimination, Plaintiff may be able to state a claim of discrimination under Title VII.  The Court need not now decide whether a plaintiff under such circumstances would fall within the zone of interests sought to be protected by Title VII, though, because it is not clear that the Complaint makes this claim, and Plaintiff may not assert that she was required to discriminate against others as a term and condition of her employment.

*B.  Retaliation Under Title VII*

As for a retaliation claim, as noted above, a person who is retaliated against for engaging in protected activity under Title VII has standing to pursue a retaliation claim under Title VII — regardless of whether that person was actually discriminated against in the first instance or was even a member of a group that was discriminated against.  *Johnson*, 215 F.3d 561; *cf. Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266, 1268-70 (6th Cir. 1977) (construing 42 U.S.C. § 1981 to provide standing to sue for a white plaintiff discharged by his former employer in alleged retaliation for the plaintiff's protesting the alleged discriminatory firing of an African-American co-worker); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir. 1975) (white employee had standing under 42 U.S.C. § 1981 to maintain action against employer for allegedly forcing him into premature retirement because employee had sold his house to an African-American coworker); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) (white plaintiff who leased property to African-American and advocated for African-American's right to use community park had standing under 42 U.S.C. § 1982 to assert cause of action against corporation that removed plaintiff's rights to use the park because

of his advocacy on behalf of the African-American tenant); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir. 1988) (white employee who was allegedly terminated because he assisted an African-American coworker with the coworker's EEOC claim had standing to pursue an action against the employer under 42 U.S.C. § 1981). Thus, to the extent that Plaintiff's Complaint attempts to state a claim for retaliation under Title VII, she has standing, as long as she can allege facts showing that she objected to practices that violate Title VII's anti-discrimination provisions and thereafter suffered an adverse employment action because of her advocacy. Because the current version of the Complaint fails to do that, however, the Court cannot now discern whether Plaintiff has standing to pursue a Title VII retaliation claim. Accordingly, Plaintiff shall have fourteen days to amend her Complaint, should she wish to do so.

Specifically, the Court concludes that while Plaintiff adequately pleads that she engaged in statutorily protected activity[1] and that she was retaliated against for doing so,[2] conspicuously absent from her Complaint is any indication of the adverse employment action that she suffered as a result of her involvement in protected activity. To prove an adverse employment action, "an employee must show a *serious and material change* in the terms, conditions, or privilege of employment."

---

[1]Statutorily protected expression that may give rise to a Title VII retaliation claim includes filing a discrimination charge with the EEOC, *Thompson*, 131 S. Ct. at 868, and reporting or complaining about alleged discriminatory practices to superiors, *Olmsted v. Taco Bell Corp*., 141 F.3d at 1460; *Meeks v. Computer Associates Intern*., 15 F.3d 1013, 1021 (11th Cir. 1994). Here, Plaintiff's Complaint notes that she complained internally about the alleged discriminatory practices and filed a charge of discrimination with the EEOC. D.E. 1 at 1, ¶ 1. The Complaint therefore sufficiently pleads the first element of a Title VII retaliation claim.

[2]Plaintiff alleges that she was "retaliated [against] because of her objection to the illegal practice." D.E. 1 at 4, ¶ 24; *see Pennington*, 261 F.3d at 1266 (quoting *Olmsted*, 141 F.3d at 1460) (to establish a causal relationship, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated").

11

*Davis v. Town of Lake Park, Fla*., 245 F. 3d 1232, 1239-40 (11th Cir. 2001) (noting that negative job performance memorandum, by itself, did not constitute an adverse employment action) (emphasis in original).  Plaintiff's Complaint states that the "terms and conditions of Plaintiff's job were changed as a result of Defendant's discriminatory practices."  D.E. 1 at 4, ¶ 25.  But Plaintiff's Complaint does not explain how the terms and conditions of her employment were altered, or even if the employment action was adverse to Plaintiff.  Plaintiff has not alleged that she was terminated, demoted, refused a promotion, or reprimanded.  Nor does she claim that she suffered any economic loss.

A plaintiff who engages in activity protected by Title VII and suffers an adverse employment action because of it can clearly bring a Title VII retaliation claim — regardless of whether that employee was the target of the discrimination about which she complained.  But Plaintiff's Complaint, as it stands now, does not sufficiently allege that Plaintiff suffered an adverse employment action.  Accordingly, Plaintiff's retaliation claim as currently pled must be dismissed, but the Court provides Plaintiff with fourteen days to amend her Complaint, should she wish to do so.[3]

---

[3] Defendant also separately moves to strike Plaintiff's Response to its Motion to Dismiss. D.E. 8.  Defendant argues that the Response was due on July 5, 2013—fourteen days after service of the Motion—but that Plaintiff filed the Response on July 9, 2013.  *Id.* at 1.  However, as Plaintiff correctly notes, the Court designated July 5, 2013, a holiday.  *See* S.D. Fla. Administrative Order 2013-37.  To determine the due date of a response to a motion that is not hand-delivered, the Local Rules direct parties to count fourteen days after the filing of the motion, then add another three calendar days.  S.D. Fla. L. R. 7(c)(1)(A).  If the fourteen-day period lands on a weekend or holiday, the fourteen-day period is extended until the next business day after the weekend or holiday.  *Id.* Because the fourteen-day period finished on July 5, 2013—a Court holiday—the period ran until the next business day, July 8, 2013, so the due date was then three days after that, on July 11, 2013. Thus, Plaintiff's Response was not untimely, and Defendant's Motion to Strike is denied.

**CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss [D.E. 4] is **GRANTED**, and Defendant's Motion to Strike [D.E. 8] is **DENIED**.  Plaintiff's Complaint [D.E.1] is dismissed without prejudice.  Should Plaintiff desire to file an amended complaint, she shall do so by November 20, 2013.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 6th day of November 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record